HARMOR OPERATING Co., INC., Respondent, *v.* VENT-O-MATIC INCINERATOR CORPORATION, Appellant.

First Department, May 15, 1956.

*Richard Glassman* of counsel (*Buchdahl, Lempel & Glassman*, attorneys), for appellant.

*Irving L. Gartenberg* of counsel (*Theodore Ellenoff* with him on the brief; *Gartenberg, Kliegman & Ellenoff*, attorneys), for respondent.

RABIN, J. This is an appeal pursuant to leave from an order of the Appellate Term unanimously affirming a final order of eviction of the Municipal Court after trial without jury.

The landlord-respondent is the owner of commercial property situated at Eleventh Avenue and 44th Street. The property consists of a three-story building facing Eleventh Avenue, and a one-story extension facing 44th Street. No tenants occupy the larger portion of the structure; the appellant is the sole and a statutory tenant at $97 monthly in the smaller part of the structure. The problem here develops from a violation placed on the three-story building by the department of housing and buildings.

The notice of violation recites a serious condition and requires the landlord " to take down and remove said building and structure or make same safe and secure " by certain specified substantial repairs. The notice referred to dangerous conditions such as bulging walls, falling ceilings, broken floors, stairs and fire escapes. The situation was so bad that police barricades had been placed around the building. Respondent chooses to cure the defects by demolition, and asserts that demolition of the larger building is not economically feasible without the

destruction as well of the premises occupied by appellant. The trial court found that such mutual demolition was necessary in the circumstances, and the proof sustains this conclusion. (Cf. *Friedman* v. *Ontario Holding Corp.*, 279 App. Div. 23, affd. 304 N. Y. 625.) Both portions of the property have a common wall, common plumbing and common utilities. These proceedings were, therefore, instituted to evict appellant in order that the entire property could be demolished. Other preparations to that end were also made by the landlord including negotiations with a wrecking company and an unsuccessful application to the department of housing and buildings for a demolition permit which was denied because of appellant's occupancy of the premises.

The appellant resists eviction on the ground that, as a statutory tenant, he may not be removed from possession except for one of the causes specified in section 8 of the Commercial Rent Law (L. 1946, ch. 3, as amd. by L. 1955, ch. 702, § 2) and that no such cause is here shown. Subdivision (c) of section 8 allows the landlord to recover possession for the immediate and bona fide purpose of demolition with the intention of constructing a new building the plans for which have been duly approved. Concededly the landlord does not come within this or any other provision of section 8 authorizing recovery of possession. Consequently, in the course of the appellate journey of this case, in order to find some sanction for the final order of eviction, the landlord attempted to bring its cause within the still undefined and unsettled scope of the doctrine which distills from constitutional guarantees the right of a landlord to withdraw his property from the rental market. (See *Matter of Emray Realty Corp.* v. *McGoldrick*, 307 N. Y. 772, 773, and *Sheridan Associates* v. *Coffey*, 1 Misc 2d 938; but cf. *Anmark Enterprises* v. *Zimring*, 1 A D 2d 1, and *Matter of Asco Equities* v. *McGoldrick*, 285 App. Div. 381.) We think affirmance here need not reach the issue of law concerning withdrawal of property from the rental market.

No matter the nature or weight of the respective rights of the landlord and tenant here, they must yield to and be measured in the context of the superseding necessity of the public that the dangerous condition existing at the property be promptly eliminated. That necessity leaves only the alternatives of repair or destruction. The proof showed to the satisfaction of the trial court, and to us, that the former alternative is, for the landlord, unreasonable to the point of economic wastefulness. Repairs would cost $7,000 to $8,000; demolition costs are estimated at $3,300; and the structure as appears from the photo-

graphic exhibit and from the nature of the violation filed, is a dilapidated building that plainly requires radical surgery rather that patchwork. We do not believe the emergency commercial rent laws mandate repair rather than demolition in such circumstances.

If, as the tenant urges, out of deference to the tenant's statutory right to occupancy the landlord must at great cost cure the violation by repair, serious constitutional issues arise. If as the tenant seems to contend, eviction and demolition may not be permitted except within the provisions of the Commercial Rent Law then the inescapable consequence is that the owner of property of little or no value with its current improvement, if confronted with a violation requiring repairs exceeding in amount the value of the property even in a repaired state, would be obliged to make such repairs so long as a single statutory tenant remains. Sufficiently difficult constitutional questions confront us if the landlord is forbidden to withdraw his property from the rental market and compelled to continue an unprofitable operation, but those difficulties are compounded when the landlord is not only compelled to continue such an operation but to expend unwisely and wastefully large sums to repair property better demolished. The appellant's argument here comes dangerously close to requiring the landlord to dedicate property to a public use without due process or just compensation. As Judge PECKHAM warned in *Health Dept. of City of N. Y.* v. *Rector, Church Wardens & Vestrymen of Trinity Church* (145 N. Y. 32, 41): " no one would contend that the amount of the expenditure which an act of this kind may cause, whether with or without a hearing, is within the absolute discretion of the legislature. It cannot be claimed that it would have the right, even under the exercise of the police power, to command the doing of some act by the owner of property and for the purpose of carrying out some provision of law, which act could only be performed by the expenditure of a large and unreasonable amount of money on the part of the owner. If such excessive demand were made the act would without doubt violate the constitutional rights of the individual."

Our rent laws undertake to accommodate the right of a tenant to a place to live and work without paying an exorbitant rental occasioned by space shortages and the right of an owner to a fair return. (Commercial Rent Law, § 1; Business Rent Law, § 1; L. 1945, ch. 314, as amd.; *Steinberg* v. *Forest Hills Golf Range,* 303 N. Y. 577, 587.) This accommodation, perforce, denies to the owner the opportunity to earn all a free rental market would allow. But the accommodation was not intended

to require the owner to maintain property at a loss (Commercial Rent Law, § 4; Business Rent Law, § 4); experience demonstrates how tenant, owner, and public all suffer by denying to an owner a fair return. The underlying purpose of the emergency rent laws is disserved by appellant's position here, and it is, therefore, no surprise that those laws do not require the result he seeks.

In *Airways Supermarkets* v. *Santone* (277 App. Div. 722, motion for leave to appeal denied 278 App. Div. 765) we held that where a building was destroyed by fire, the relationship of landlord and tenant was thereby terminated and the owner was under no obligation to reconstruct for the benefit of former statutory tenants. We therefore considered it was unnecessary to establish a right to evict under any one of the subdivisions of section 8 which was there applicable. We here similarly conclude that, for purposes of the emergency rent laws, the demolition of the premises rendered essential by the violation constructively terminates the tenancy and accords the owner the right to evict.

The determination of the Appellate Term should be affirmed, with costs to respondent.

PECK, P. J., BREITEL, BOTEIN and Cox, JJ., concur.

Determination unanimously affirmed, with costs to the respondent.